# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  4:21-CR-675 SRC/PLC** |
| | ) | |
| **HOLLIS WEAVER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## Report and Recommendation

This matter is before the Court on Defendant's Motions to Suppress Evidence seized during a search of Defendant's vehicle and residence on November 10, 2021[1] [ECF No. 58, 83], Motion to Suppress Statements [ECF No. 60], and Motion to Strike testimony pursuant to the Jencks Act, 18 U.S.C. Section 3500 [ECF No. 128]. The Government opposes the motions. [ECF Nos. 80, 74, 86, 144]. The Court held an evidentiary hearing on Defendant's motions to suppress and the parties filed post-hearing memoranda on the motions. [ECF Nos. 135, 140, 143] Following the evidentiary hearing, Defendant filed his Motion to Strike testimony and the Government filed its opposition. [ECF Nos. 128, 144].

As grounds for his Motions to Suppress the physical evidence seized from his vehicle and residence, Defendant argues the searches were not supported by reasonable suspicion that Defendant violated a condition of his release or that evidence of his alleged violation would be present in either his vehicle or residence. [ECF Nos. 58, 83] Defendant also contends the searches

---

[1] Defendant filed two Motions to Suppress, one seeking to suppress the evidence seized during the search of his vehicle [ECF No. 58] and another seeking to suppress the evidence seized during the search of his residence [ECF No. 83]. Because Defendant's arguments supporting those motions are identical, the Court address his motions and arguments together.

violated the terms of his supervised release because: (1) Defendant's probation officer failed to request that Defendant submit his vehicle and residence to a search, (2) Defendant's probation officer failed to designate which area or areas of the vehicle and residence would be searched, and (3) the searches were conducted by more than one probation officer. [2] [ECF Nos. 58, 83] In support of his Motion to Suppress Statements, Defendant contends all of the statements he made before, during, and after U.S. Probation Officers detained him on November 10, 2021 must be suppressed because he was not advised of his Miranda rights prior to a custodial interrogation. [ECF No. 60] With respect to his Motion to Strike, Defendant seeks to strike Probation Officer Grant Sneed's testimony given at the evidentiary hearing, asserting the Government violated the Jencks Act, 18 U.S.C. § 3500, because it failed to produce covered materials prior to the evidentiary hearing. [ECF No. 128]

The Government opposes Defendant's Motions to Suppress the physical evidence asserting the searches were based on reasonable suspicion and complied with the terms of Defendant's supervised release. [ECF Nos. 80, 86]   The Government contends the Court should deny Defendant's Motion to Suppress Statements because the uncontested evidence establishes that Defendant was advised of his Miranda rights prior to questioning.  [ECF No. 74] The Government opposes Defendant's Motion to Strike, asserting Defendant failed to demonstrate a Jencks Act

---

[2] Defendant's memorandum in support of his Motions to Suppress includes the additional argument that the evidence seized by U.S. Probation on November 10, 2021, should be suppressed as fruit of the poisonous tree. [ECF No. 61] Specifically, Defendant argues the evidence should be suppressed because the reasonable suspicion supporting the November 2021 searches was premised upon information obtained by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) on September 10, 2021 during a search of Defendant's residence executed pursuant to a search warrant that was not supported by probable cause. The Court does not address this argument because it was not raised in either of Defendant's Motions to Suppress evidence. [ECF Nos. 58, 83]  Defendant also did not present any argument on this point in his post-hearing brief or memorandum of law, evidencing an intent to abandon the argument. [ECF Nos. 135, 140]

violation because the Act does not require pre-trial disclosure of covered materials and Defendant has not, at any time, moved for production of the Jencks materials. [ECF No. 144]

## I.    Factual Background

On December 12, 2017, Defendant pleaded guilty to the offense of felon in possession of a firearm. [Government's Ex. 1] On March 28, 2018, the Honorable Audrey G. Fleissig, United States District Judge, sentenced Defendant to 27 months imprisonment, followed by 2 years of supervised release. [Government's Ex. 1] As part of the judgment, Defendant's supervised release included an Additional Supervised Release Term providing:

> You must submit your person, property, house, residence, vehicle, papers, computers…, other electronic communications or data storage devises or media, or office, to a search conducted by a United States probation officer. You must warn other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation.

[Government's Ex. 1]

On December 15, 2019, Defendant began his term of supervised released. [Defendant's Ex. A] On December 18, 2019, Defendant signed a document acknowledging that a United States Probation Officer instructed him on the conditions of his supervised release and provided him with a written copy of the judgment containing those conditions. [Government's Ex. 1]

A. November 10, 2021 Searches

In September 2020, Grant Sneed, a United States Probation Officer for the United States Probation Office in the Eastern District of Missouri (U.S. Probation), took over supervising Defendant from another officer. (Tr. 13-15) P.O. Sneed is also a member of U.S. Probation's Special Response Team (SRT), a unit of probation officers responsible for conducting searches related to supervised individuals' conditions of release. (Tr. 13)

3

P.O. Sneed reviewed Defendant's file and determined that Defendant had been advised of the conditions and restrictions of his supervised release. (Tr. 15) P.O. Sneed also learned that Defendant "suffered some trauma" after being shot in the head in July 2020. (Tr. 17)  P.O. Sneed testified that Defendant expressed frustration "[r]egarding his ability to protect himself from future retaliations or future violence[,]" and his "inability to have possession of a firearm."[3] (Tr. 17)

On September 10, 2021, an ATF agent advised P.O. Sneed that she received information that Defendant was "directly or indirectly involved with a homicide" and that witnesses observed Defendant retrieving items from the homicide victim at the scene.[4] (Tr. 17-18) The agent told P.O. Sneed that ATF agents observed an empty gun box but no gun while executing a search warrant at Defendant's residence earlier that day and that Defendant's girlfriend informed ATF agents that she and Defendant knew the warrant was going to be executed. (Tr. 18-19, 25-26).  Later that day, P.O. Sneed spoke with Defendant about the incident and Defendant admitted to being at the scene of the homicide but denied retrieving a firearm from the victim. (Tr. 19, 29). Defendant told P.O. Sneed that Defendant's girlfriend retrieved something, which P.O. Sneed believed to be a cellular phone, from the victim. (Tr. 19).

On November 2, 2021, the ATF agent advised P.O. Sneed that the ATF "obtained evidence that [Defendant] might still be in possession of the alleged firearm that was retrieved from the homicide victim." (Tr. 21)  After this conversation, P.O. Sneed decided to "staff" the case with his immediate supervisor "to determine if [U.S. Probation] had reasonable suspicion that there was a firearm in the residence and if a search could be conducted." (Tr. 21).

---

[3] Officer Sneed's notes reflect that Defendant "stressed that he was unable to protect himself from future attacks" on October 29, 2020, and "that he was concerned with the condition restricting him from having protection" on May 17, 2021. [Defendant's Ex. B]

[4] The homicide in question occurred on August 14, 2021, when Dwayne Wysinger, Defendant's girlfriend's nephew, was shot to death in his vehicle. [ECF No. 63-2, 135-1]

Following office protocols, P.O. Sneed wrote a memorandum to his immediate supervisor, P.O. Charo Prude, requesting a search of Defendant's vehicle and residence. (Tr. 21, 108-110) P.O. Prude testified P.O. Sneed believed there was reasonable suspicion to conduct a search based on the ATF witness statements that Defendant took a firearm from the victim at a homicide scene, a statement from Defendant's girlfriend that Defendant was in possession of a firearm, the ATF agents' observation of an empty gun box in Defendant's residence during a search, the ATF communication with P.O. Sneed that the ATF "had some information about phone records linking Defendant to the [homicide] victim," that Defendant advised P.O. Sneed that Defendant's girlfriend retrieved the victim's bag from the homicide scene, that Defendant had previously been shot and spoke of the need to protect himself, that Defendant had gang affiliations, and that Defendant was on supervision for being a felon in possession. (Tr. 111-112) Based on this information, P.O. Prude approved P.O. Sneed's request for the searches. (Tr. 108-109, 113)

After receiving P.O. Prude's approval, P.O. Sneed submitted a memorandum to U.S Probation's "upper management staff" and P.O. Clint Vestal, the supervisor of the SRT, requesting a search of Defendant's person, residence, and vehicle to "determine any criminal activity, and [possibly] locate a firearm." [Defendant's Ex. A] (Tr. 22, 26-27, 110-111) In the memorandum, P.O. Sneed asserted he believed Defendant was in possession of a firearm based on the following: (1) the September 2021 information from ATF that Defendant was reportedly in possession of a firearm after retrieving one from the victim at the scene of a homicide on August 14, 2021, (2) Defendant's girlfriend's statement that Defendant retrieved the firearm from the homicide victim, (3) an empty gun box observed in Defendant's residence by ATF agents during a search on September 10, 2021, (4) ATF's belief that Defendant was "either directly or indirectly connected" to the homicide based on phone records demonstrating Defendant and his girlfriend contacted the

victim shortly before the murder, (5) Defendant's admission that he was at the scene shortly after the homicide and that his girlfriend retrieved the victim's bag, (6) Defendant having been shot in the head in July 2020 as part of a family dispute, (7) Defendant "occasionally" professing the need to protect himself and seek retaliation, (8) Defendant's membership in two gangs, and (9) Defendant's prior conviction of the offense of being a felon in possession of a firearm. [Defendant's Ex. A]

At the hearing, P.O. Sneed testified these facts provided reasonable suspicion that Defendant was in possession of a firearm. (Tr. 41-42) P.O. Sneed stated he also considered the ATF agent's November 2, 2021 communication that the ATF had evidence that Defendant might still be in possession of the firearm he retrieved from the homicide victim in deciding to request the searches even though he did not include this information in the memorandum. (Tr. 21-22, 28)

After receiving permission from U.S. Probation's management staff and supervisors, Jo Cooper, the Assistant Deputy Chief of U.S. Probation, sought and received permission for the search from the sentencing judge. (Tr. 14, 22, 44-45, 109-111) After receiving approval from the sentencing judge, P.O. Sneed and P.O. John Wolf, an SRT coordinator who acted as the search lead, briefed members of the SRT that they would be searching Defendant's vehicle and residence for a firearm. (Tr. 44-46, 58, 71, 73, 77, 88-89, 97)

On November 10, 2021, Defendant reported to the U.S. Probation office. (Tr. 23). Upon his arrival, members of the SRT handcuffed Defendant and informed him they were enforcing the search condition of the terms of his supervised release. (Tr. 23, 50-52, 56, 78) Probation officers searched Defendant's person, recovering a set of vehicle keys. (Tr. 23, 50-52, 56, 78)

Probation Officers Damir Begovic, John Epple, and Tara Davis used the keys to access a gray Chevrolet Traverse parked nearby to conduct a search. (Tr. 53, 59-61, 67, 76-77, 79, 96-97)

The officers searched the entire vehicle, including the glove box, center console, trunk, and under the seats and hood. (Tr.  68-69, 90-91) Inside of a zippered backpack on the rear passenger floorboard, officers located a Glock 19 9mm handgun with a laser and an extended magazine with one round of ammunition attached, loose ammunition, a loaded magazine, suspected marijuana, a phone, and a digital scale. (Tr. 53, 81- 84, 90) [Defendant's Ex. 2] Officers also recovered a document with Defendant's name on it.  (Tr.  61)

Following completion of the search of Defendant's vehicle, members of the SRT travelled to Defendant's residence to perform a search. (Tr.  37, 70). P.O. Wolf led the search of Defendant's residence, directing the search efforts of five other probation officers. (Tr.  37, 45-46, 50, 55, 71, 84, 93, 94) After the probation officers cleared the residence of people, they searched the entire residence. (Tr.  37, 55, 63, 73, 75, 94) During the search, officers recovered (1) a Sig Sauer handgun with a loaded magazine from underneath the living room couch; (2) a loaded magazine inside of a zippered backpack in the kitchen; and (3) a gun case, two magazines, ammunition, and a laser attachment in a closet in the living room. (Tr.  56, 63, 73, 75, 85-87, 94 100-101, 102) [Defendant's Ex. 2]

During the search of Defendant's residence, P.O. Sneed and Defendant waited in a government vehicle outside of Defendant's residence. (Tr.  38)  P.O. Sneed testified that after the search was completed,  an officer stood outside of the vehicle and administered Miranda warning to Defendant. (Tr.  39)  P.O. Sneed stated he asked Defendant about the items recovered from his home after Defendant "was presented with his Miranda rights by a different officer." (Tr.  38-39)

P.O. Wolf testified that he interviewed Defendant after the searches were complete. (Tr. 46)  P.O. Wolf stated he advised Defendant of his Miranda rights, which P.O. Wolf recited from his phone. (Tr.  47-48) P.O. Wolf asked Defendant if he understood his rights and Defendant

responded affirmatively. (Tr. 48) P.O. Wolf testified Defendant admitted that the suspected marijuana recovered from the vehicle belonged to him but denied knowledge of the other items in the backpack recovered from the vehicle. (Tr. 48-49) Defendant stated the firearms, magazines, ammunition, and gun box found in the residence belong to Defendant's brother, who was attempting to sell the firearm to Defendant's girlfriend. (Tr. 49)

B. Jencks Act Materials

Prior to the evidentiary hearing, on March 16, 2023, Government counsel provided defense counsel documents that P.O. Sneed authored and that were related to his supervision of Defendant. [ECF No. 128-1] Included in the disclosure was the memorandum P.O. Sneed wrote to his supervisors seeking approval for the searches and notes written by P.O. Sneed about his contacts with Defendant. [ECF No. 128-3, 128-4]

At the April 10, 2023 evidentiary hearing, P.O. Sneed offered testimony related to these documents and the documents were admitted into evidence. [ECF No. 123] During cross-examination, P.O. Sneed testified that he also created notes related to his communications with ATF personnel regarding Defendant. (Tr. 29) When asked to refer to those notes, P.O. Sneed answered that the notes were not available for reference because they were not were not included in the exhibits admitted at the hearing. (Tr. 33) P.O. Sneed explained that the notes submitted to the Court were of his contacts with Defendant and that he had a separate set of notes for contacts he had with third-parties about Defendant's case. (Tr. 31-32, 40)

II. Discussion

A. Motion to Strike for Failure to Produce Jencks Act Materials

On June 11, 2023, Defendant filed a Motion to Strike portions[5] of P.O. Sneed's testimony

---

[5] In his Memorandum in support of the Motion to Strike, Defendant modified his requested relief and asked the Court to strike the entirety of Officer Sneed's testimony. [ECF No 138]

at the April evidentiary hearing asserting the Government violated the Jencks Act, 18 U.S.C. § 3500. [ECF No. 128] Specifically, Defendant contends the Government fail to produce, prior to the evidentiary hearing, P.O. Sneed's notes documenting his communications with ATF personnel on September 10, 2021 and November 2, 2021, regarding Defendant.[6] [ECF No. 128] Defendant argues the Government's pre-hearing partial production of P.O. Sneed's notes "creates a duty of full production[.]" [ECF No. 138]  The Government asserts Defendant has failed to demonstrate a Jencks Act violation because the Act does not require pre-trial disclosure of covered materials and Defendant has not, at any time, moved for production of the Jencks materials.[7] [ECF No. 144]

The Jencks Act provides in relevant part:

> (a)    In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

---

[6] Defendant asserts these documents classify as material subject to disclosure under the Jencks Act and the Government does not dispute this assertion.  [ECF Nos. 128, 138, 144] The Court accepts the Government's concession for purposes of this Report and Recommendation.

[7] Defendant filed his Motion to Strike on June 11, 2023, and his memorandum in support of the motion on July 11, 2023.  [ECF Nos. 128, 138]  On July 27, 2023, 46 days after Defendant filed his Motion to Strike, the Government filed its response opposing the motion. [ECF No. 144] In his reply, Defendant argues, pursuant to Local Rule 4.01 (B), the Government's response was due 14 days after the motion was filed or on June 26, 2023. [ECF No. 146]  Defendant requests the Court to either strike the Government's response or enter a show cause order directing the Government's response as to why the filing should not be stricken for being filed late. [ECF No. 146]

Local Rule 4.01(B) provides that a party must file any memorandum in opposition to a motion within 14 days of service of the motion. The Court possesses the discretion "to determine what departures from its local rules of practice may be overlooked." Trundle v. Bowen, 830 F.2d 807, 809 (8th Cir. 1987).

While the Government should have sought an extension of time from the Court if its response was not going to be timely filed, the Court observes that Defendant violated Local Rule 4.01(A) by failing to file the memorandum in support of his Motion to Strike contemporaneously with the motion. [ECF Nos. 128 & 138] See Local Rule 4.01 (A) ("Unless otherwise directed by the Court, the moving party must file *with* each motion a memorandum in support of the motion, including any relevant argument and citations to any authorities on which the parties relies.")(emphasis added). Instead, Defendant filed his memorandum in support 30 days after filing the motion. [ECF No. 128 & 138]

More importantly, Defendant does not allege that he suffered any prejudice as a result of the Government's late filing. Because Defendant has not suffered any prejudice, the Court denies Defendant's request to strike the Government's response or to enter a show cause order.

(b)    After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

....

(d)    If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

18 U.S.C. § 3500.

The Jencks Acts establishes "the outer limits by which the Government must make disclosures of statements of its prospective witnesses." United States v. Shipp, No. S2-4:18CR380 RWS/NCC, 2021 WL 6118776, at *14–15 (E.D. Mo. Sept. 30, 2021). "Although in many cases the government freely discloses Jencks Act material to the defense in advance of trial, the government may not be required to do so." United States v. White, 750 F.2d 726, 729 (8th Cir. 1984); accord United States v. Green, 151 F.3d 1111, 1115 (8th Cir. 1998); United States v. Wilson, 102 F.3d 968, 971-72 (8th Cir. 1996). Defendant cites no Eighth Circuit cases holding that the Government is required to voluntarily disclose Jencks Act material prior to the time provided for in the Act or that a partial pre-trial production of Jencks Act material "creates a duty of full production." Defendant did not file a motion requesting a Court order for the Government to produce any statement of P.O. Sneed relating to the subject matter to which he testified and, in the absence of such an order, Defendant cannot demonstrate that the Government failed to comply with the Act.[8] See United States v. Benton, 890 F.3d 697, 718 (8th Cir. 2018) ("The Jencks Act

---

[8] In its Response, the Government asserts it did not become aware of the missing Jencks Act

requires a court to order the government, upon request by the defendant, to produce any statement in the government's possession which relates to the matter on which a witness called by the government has testified on direct examination.") Because Defendant has not established a violation of the Jencks Act, the Court recommends denial without prejudice of Defendant's Motion to Strike portions of P.O. Sneed's testimony for a Jencks Act violation.

    B.  <u>Motions to Suppress Physical Evidence</u>

    Defendant seeks to suppress the evidence seized during the November 10, 2021 searches of his vehicle and residence, including the firearms, ammunition, magazines, laser attachments, gun case, suspected marijuana, and digital scale. [ECF Nos. 58, 83] Defendant asserts the searches were not supported by reasonable suspicion that he violated a condition of his release or that evidence of his alleged violation would be present in either his vehicle or residence. [ECF Nos. 58, 83] Defendant also argues the searches violated the terms of his supervised release because: (1) P.O. Sneed failed to request that Defendant submit his vehicle and residence to a search, (2) P.O. Sneed failed to designate which area or areas of the vehicle and residence would be searched, and (3) the searches were conducted by more than one probation officer and not by P.O. Sneed. [ECF Nos. 58, 83]

    The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

---

material until Defendant's cross-examination. [ECF No. 144] The Government also asserts that Defendant has not requested these additional materials from the Government following the revelation of its existence. [ECF No. 144] Despite Defendant's failure to request these materials or file a motion requesting their disclosure, the Government "attached the additional written material" to its response as an exhibit. [ECF Nos. 144, 144-1] In his reply, Defendant requests the Court disregard (1) the Government's assertion that it first learned about the additional Jencks Act material at the hearing because this factual assertion is not in the record and is not supported by an affidavit or declaration, and (2) the Government's exhibit because it lacks foundation and is not admissible evidence. [ECF No. 146]

    The Court notes that Defendant's criticisms could equally apply to Defendant's Exhibit 1 [ECF No. 128-1], a document Defendant attached as an exhibit to his Motion to Strike and which Defendant relies upon in support of factual allegations contained within his motion. Regardless, because Defendant has failed to demonstrate a violation of the Jencks Act, the sufficiency of the Government's explanations and preventative curative measures are immaterial and, thus, the Court makes no ruling related to these issues.

houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Supreme Court has long held that a probationer has limited Fourth Amendment rights because [they have] a diminished expectation of privacy." Ryno v. City of Waynesville, 58 F.4th 995, 1007 (8th Cir. 2023). Thus, while the Fourth Amendment's requirement that searches be "reasonable" extends to searches of a probationer's home, an individual's status as a probationer justifies "departures from the usual warrant and probable-cause requirements." Griffin v. Wisconsin, 483 U.S. 868, 873-74 (1987).[9]

The "touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" United States v. Knights, 534 U.S. 112, 118–19 (2001) (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)). "The Supreme Court has held that 'the balance of these considerations requires no more than reasonable suspicion to conduct a search of [a] probationer's house.'" Makeeff, 820 F.3d at 1000 (quoting Knights, 534 U.S. at 121). When a probationer is subject to a search condition, searches of a probationer's personal property must be supported, at most, by reasonable suspicion.[10] Ryno, 58 F.4th at 1008.

---

[9] "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967) (footnotes omitted). One of these exceptions is the probation-search exception, which permits a probation officer to conduct a warrantless search of a probationer who is subject to a search condition if the officer has reasonable suspicion that the probationer is criminally active or otherwise violating the terms of his probation. U.S. v. Makeeff, 820 F.3d 995, 1001 (8th Cir. 2016); U.S. v. Rodriquez, 829 F.3d 960, 961-62 (8th Cir. 2016).

[10] In Ryno, 58 F.4th at 1008, the Eighth Circuit "assume[d] without deciding" that the reasonable suspicion standard applied to a search of the probationer's computer, where the probationer was subject to a search condition. In doing so, the court observed that it had, in a few limited circumstances, held that a search of a probationer's personal property was permissible even absent suspicion when the probationer is subject to and aware of a broad search condition. Id. (citing United States v. Kuhnel, 25 4th 559, 564 (8th Cir. 2022) (search of a probationer's vehicle pursuant to search condition was "reasonable and permissible even in the absence of suspicion"; United States v. Jackson, 866 F.3d 982, 984-85 (8th Cir. 2017) (search of supervised releasee's cell phone was reasonable absent suspicion when he was aware of the search

This lower standard is based on the recognition that "probationers do not enjoy the absolute liberty to which every citizen is entitled." Knights, 534 U.S. at 119 (quotations and citations omitted). Probation is "a form of criminal sanction" and, "[j]ust as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." Id. When a court imposes a search condition upon a probationer, it "significantly diminishe[s] [the probationer's] reasonable expectation of privacy." Id. at 120 (footnote omitted). As such, "[a]n officer having reasonable suspicion that a probationer, who is subject to a search condition, is criminally active is sufficient to establish 'enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.'" Makeeff, 820 F.3d at 1001 (quoting Knights, 534 U.S. at 121).

"[F]ederal supervised release, ... in contrast to probation, is meted out in addition to, not in lieu of, incarceration." Samson v. California, 547 U.S. 843, 855 (2006) (quoting United States v. Reyes, 283 F.3d 446, 461 (2d Cir. 2002)). "Supervised release, parole, and probation lie on a continuum. The most severe is 'supervised release,' which is ... followed, in descending order, by parole, then probation[.]" Makeeff, 820 F.3d at 1001 (quoting United States v. Lifshitz, 369 F.3d 173, 181 n. 4 (2d Cir. 2004) (citation omitted)). Thus, individuals on supervised release have the "most circumscribed expectation of privacy." Id.

1. Reasonable Suspicion

Defendant argues the searches of his vehicle and residence lacked reasonable suspicion that he had violated a condition of his supervised release or that evidence of any violation would

---

condition and resided in a facility that prohibited cell phones)). The court noted, however, that it had "never held that a probationary search condition authorizes the search of a probationer's personal property in *any* circumstances absent suspicion." Id. (emphasis in original)

be found in the locations searched. [ECF Nos. 58, 61, 83, 135, 140] Defendant contends that the totality of the circumstances known to P.O. Sneed did not support a particularized and objective basis for suspecting wrongdoing. [ECF No. 140] Specifically, Defendant argues the fact that the ATF found an empty gun box and no contraband during the September 10, 2021 search does not support reasonable suspicion that Defendant possessed a firearm and, even if it did, this information was too stale to support a finding of a violation or possession two months later on November 10, 2021. [ECF No. 61] The Government responds that the totality of the circumstances supports a finding of reasonable suspicion that Defendant was in possession of a firearm in violation of the conditions of his supervised release.

As a probationer subject to a search condition, the Fourth Amendment requires a search of Defendant's home to be supported by reasonable suspicion and a search of his vehicle to be supported by, at most, reasonable suspicion. See Makeeff, 820 F.3d at 1000, Knights, 534 U.S. at 121, Ryno, 58 F.4th at 1008. The search condition of Defendant's supervised release also limited searches to those based on reasonable suspicion that Defendant had violated a condition of his supervised release.[11] [Government's Ex. 1] "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." Ryno, 58 F.4th at 1007 (quoting United States v. Hamilton, 591 F.3d 1017, 1022 (8th Cir. 2010)). Reasonable suspicion may be based on hearsay information. Adams v. Williams, 407 U.S. 143, 146-147 (1972).

In his memorandum to U.S. Probation's management and supervisors requesting the searches, P.O. Sneed provided the following facts supporting reasonable suspicion: (1) the September 2021 information from ATF that Defendant was reportedly in possession of a firearm

after retrieving one from a homicide victim on August 14, 2021, (2) Defendant's girlfriend's statement that Defendant retrieved the firearm from the homicide victim, (3) an empty gun box observed in Defendant's residence by ATF agents during a search on September 10, 2021, (4) the ATF's belief that Defendant was either directly or indirectly connected to the August 14, 2021 homicide based on phone records demonstrating Defendant and his girlfriend contacted the victim shortly before the murder, (5) Defendant's admission that he was at the scene shortly after the homicide and that his girlfriend retrieved the victim's bag, (6) Defendant having been shot in the head in July 2020 as part of a family dispute, (7) Defendant's prior statements expressing concern about the need to protect himself, (8) Defendant's membership in two gangs, and (9) Defendant's prior conviction for the offense of felon in possession of a firearm. [Defendant's Ex. A]

While these facts alone are sufficient to establish reasonable suspicion that Defendant was in possession of a firearm, P.O. Sneed testified that an ATF agent advised him on November 2, 2021, eight days before the searches were conducted, that the ATF had "obtained evidence that [Defendant] might still be in possession of the alleged firearm that was retrieved from the homicide victim." (Tr. 21). Not only did this information further support a finding of reasonable suspicion, but also demonstrates that P.O. Sneed's information was not "stale." Based on these facts, the Court finds that P.O. Sneed and U.S. Probation had reasonable suspicion to search Defendant's person, vehicle, and residence for firearms. Accordingly, the Court recommends denial of Defendant's Motions to Suppress [ECF Nos. 58, 83] the evidence recovered from Defendant's vehicle and residence based on a lack of reasonable suspicion that Defendant violated a condition of his supervised release.

2. Terms of Defendant's Supervised Release

In his Motions to Suppress, Defendant asserts the evidence seized during the November

10, 2021 searches of his vehicle and residence must be suppressed because the searches violated the search condition included in the terms of his supervised release. [ECF Nos. 58, 83] Specifically, Defendant asserts the searches violated the terms of his supervised release because: (1) P.O. Sneed failed to request that Defendant submit his vehicle and residence to a search, (2) P.O. Sneed failed to designate which area or areas of the vehicle and residence would be searched, and (3) the searches were conducted by more than one probation officer and not by P.O. Sneed. [ECF Nos. 58, 83]  Defendant's filings do not articulate a legal theory explaining or supporting his contention that a "violation" of the search condition would require suppression of the evidence. [ECF No. 58, 61, 83, 135, 140]

As already noted, the Fourth Amendment protects individuals against unreasonable searches and seizures, and "the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" Knights, 534 U.S. at 118–19. A probationer subject to a search condition has a "significantly diminished…reasonable expectation of privacy." Id. at 120. As such, when a probationer is subject to a search condition, a search need only be supported by reasonable suspicion. Makeeff, 820 F.3d at 1000, Knights, 534 U.S. at 121, Ryno, 58 F.4th at 1008.

In the absence of any explanation by Defendant, the Court assumes that Defendant believes that a violation of the specific terms of the search condition impacts the assessment of the reasonableness of the search because, arguably, Defendant's expectation of privacy is defined by the terms of the search condition. Thus, the Court will consider whether the searches violated the search condition and, if so, whether the resulting search was unreasonable under Fourth Amendment standards.

a.  Request to Submit to Searches

Defendant contends the searches of his vehicle and residence violated the search conditions of his supervised release because P.O. Sneed failed to request that Defendant "submit" his vehicle and residence to a search. [ECF No. 58 & 83] Specifically, Defendant contends the search provision requiring him to "submit" to a search of his person, vehicle, and residence necessarily requires that the probation officer "request…to search a particular item." [ECF Nos. 58, 83]  In his post-hearing brief, Defendant argues the search condition "does not give [U.S. Probation] the sweeping authority to search…Defendant's entire vehicle without requesting to search it or the authority to search a Defendant's residence from top to bottom without requesting to search it." [ECF No. 135] Defendant maintains that U.S.  Probation has an "obligation" to request a search and that Defendant's refusal would constitute a "violation of the supervised release terms" for which P.O. Sneed could have filed a petition with the Court to modify the terms of Defendant's release or revoke Defendant's release. [ECF No. 140]  Defendant does not cite to any legal authority supporting his interpretation that the search condition requires a probation officer to request and obtain a defendant's consent before performing a search. The Government opposes Defendant's motion arguing that the law does not require consent before a probation officer performs a search, but instead only requires that the Defendant have sufficient notice that he was subject to a search and that the search be based on reasonable suspicion. [ECF No. 80 & 86]

Here, the search condition provides that Defendant "must submit" to a search, clearly conveying that Defendant does not have the option of refusing a search based upon reasonable suspicion. See United States v. Borges-Sánchez, No. 21-147 PAD, 2023 WL 2950579, at *6 (D. P.R. Apr. 14, 2023) (where a probation officer has reasonable suspicion that the defendant violated the conditions of his supervised release, the officer is not required to obtain the defendant's consent

17

to search where his supervised release terms stated the defendant "shall submit" to a search conducted by a probation officer based on reasonable suspicion). Because the terms of his supervised release required Defendant to submit to a search, there is no basis to additionally require Defendant's consent to the search. Accordingly, the Court recommends denial of Defendant's Motions to Suppress [ECF Nos. 58 & 83] on the grounds that P.O. Sneed violated the terms of Defendant's supervised release by failing to request that Defendant consent to the searches of his vehicle and residence.

      b.  <u>Designation of the "Areas" to be Searched</u>

Defendant contends P.O. Sneed and U.S. Probation also violated the search condition by failing to specify the area or areas of the vehicle and residence to be searched. [ECF No. 58, 83] Defendant's supervised release conditions provided that, "[t]he probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation." [Government's Ex. 1] Defendant argues P.O. Sneed and U.S. Probation had to "designate areas" of the vehicle and residence "thought to contain evidence of the violation" and, therefore, violated the terms of the search condition by searching the entire vehicle and residence. [ECF No. 58, 83] Defendant, again, fails to cite any authority supporting his interpretation.

As already noted, the search condition required Defendant to submit his "person, property, house, residence, vehicle, papers, computers…, other electronic communications or data storage devises or media, or office," to a search. [Government's Ex. 1] In his memorandum to the U.S. Probation's management, P.O. Sneed requested to search Defendant's person, vehicle, and residence based on his reasonable suspicion that Defendant was in possession of a firearm, a violation of the terms of Defendant's supervised release. [Defendant's Ex. A] Simply stated, the

designated "areas" were Defendant's person, vehicle, and residence. At the hearing, several probation officers testified that because they suspected Defendant possessed a firearm, they searched locations within Defendant's vehicle and residence that would "fit" a firearm. Defendant has presented neither argument nor authority to support the conclusion that the supervised release "search" condition required U.S. Probation to specify the area to be search with additional precision.[12]  Accordingly, the Court recommends denial of Defendant's Motions to Suppress [ECF Nos. 58, 83] on the grounds that P.O. Sneed and U.S. Probation violated the search condition of Defendant's supervised release by failing to identify the areas to be searched.

c.  <u>Search Conducted By More Than One Probation Officer</u>

Defendant argues U.S. Probation violated the search condition of the terms of his supervised release by using more than one probation officer to conduct the searches of his vehicle and residence.  [ECF Nos. 58, 83] Defendant contends the search condition requiring him to submit "to a search conducted by a United States probation officer" and stating that "[t]he probation officer may conduct a search under this condition" permits only a single probation officer to conduct a search and that this officer would "presumably [be] the probation officer assigned to Defendant."  [ECF Nos. 58, 83, 135, 140]

The Government responds that there is no legal requirement for only one U.S. Probation Officer to conduct a search. [ECF No. 80, 86, 143] Alternatively, the Government argues that even

---

[12] Defendant's argument appears to track challenges to search warrants on the grounds of lack of particularity. "To satisfy the particularity requirement of the Fourth Amendment, the items to be seized and places to be searched must be described with sufficient particularity as to enable the searcher to locate and identify the places and items with reasonable effort and to avoid mistakenly searching the wrong places or seizing the wrong items." <u>United States v. Gleich,</u> 397 F.3d 608, 611 (8th Cir. 2005).  "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." <u>United States v. Thurman,</u> 625 F.3d 1053, 1057 (8th Cir. 2010) (quotation omitted).  Here, even if "particularity" is required, P.O. Sneed's request for a search of Defendant's person, vehicle, and residence for a firearm was sufficiently particular under the circumstances here.

if the search was contrary to the plain language of the search condition, the search was not unconstitutional and suppression is not required. [ECF No. 80, 143]

Under Defendant's hyper-technical reading, the use of more than one probation officer to conduct a search would constitute a "violation" of the search condition. Defendant, however, has failed to present any authority supporting the notion that a hyper-technical reading is appropriate or that a variation in the number of personnel performing a search violates the scope of the search condition or is a constitutional violation.

To determine whether a search violates the Fourth Amendment, courts "weigh the degree to which a search intrudes upon an individual's reasonable expectation of privacy against the degree to which the government needs to search to promote its legitimate interests." U.S. v. Brown, 346 F.3d 808, 811 (8th Cir. 2003). In Brown, 346 F.3d at 812, the defendant challenged a search conducted by probation officers and law enforcement personnel, asserting the inclusion of law enforcement officers in the search violated the search condition of his probation authorizing searches by probation officers. The Eighth Circuit held a court must balance the "additional privacy intrusion resulting from the presence of the additional personnel" against the "legitimate interests advanced by [the law enforcement officers'] presence." Id. Finding that "[p]robation officers are neither designed nor staffed to conduct these types of searches alone[,]" and that they often rely on law enforcement for safety, the Eighth Circuit concluded that "the governmental interest in ensuring probation officer safety outweighs any marginal, additional intrusion into [the defendant's] privacy resulting from the task force agents' presence." Id. Moreover, if a probation officer had reasonable suspicion that the defendant was violating the terms of his probation "when a probationary condition authorizes searches by probation officers, the Fourth Amendment does not require probation officers to choose between endangering themselves by searching alone and

foregoing the search because they lacked the resources and expertise necessary to search alone safely." Id.

Although Brown is not precisely on point, its analysis is instructive. The testimony at the hearing in this case was that the probation officers cleared the residence of other occupants prior to conducting the search, that one officer was tasked with coordinating the search, and that another officer collected and secured the evidence located by other officers conducting the search. Requiring a single probation officer to conduct a search clearly would create safety issues for the sole officer, requiring him or her to both clear the search area of potentially hostile onlookers and to remain unprotected while performing the search itself. Adopting Defendant's contention that multiple probation officers should be prohibited from searching renders the search, in essence, less efficient which not only adds risk but provides no discernable benefit to any party.

The fact that more than one probation officer executed the searches, including officers that were not assigned to supervise Defendant, provided a marginal intrusion into Defendant's privacy while advancing the Government's legitimate interests in executing the search in a safe, efficient, and effective manner. The Court finds the search was reasonable under the totality of the circumstances. Accordingly, the Court recommends denial of Defendant's Motions to Suppress [ECF Nos. 58, 83] on the grounds that U.S. Probation officers violated Defendant's Fourth Amendment rights by utilizing more than one probation officer to conduct the searches.

C. Motion to Suppress Statements

Defendant filed a Motion to Suppress Statements seeking to suppress all statements made by him "before, during and after" he was detained by probation officers on November 10, 2021, asserting the officers subjected him to a custodial interrogation without advising him of his

Miranda rights.[13] [ECF No. 60] In support, Defendant argues the First Amended Petition for Warrant or Summons for Offender Under Supervision filed with the Court by P.O. Sneed does not state that Defendant was advised of his Miranda rights prior to being interviewed. [ECF Nos. 60, ¶¶ 5-8, 58-7] In his post-hearing brief, Defendant acknowledges that P.O. Wolf testified to advising Defendant of his Miranda rights prior to interviewing him but asserts that P.O. Sneed's testimony that "he did not read [Defendant] his Miranda rights" demonstrates that Defendant's rights were violated. [ECF No. 135]   The Government opposes Defendant's motion on the grounds that the uncontroverted evidence is that P.O. Wolf advised Defendant of his Miranda rights prior to Defendant giving any statements.[14]

At the evidentiary hearing, P.O. Wolf testified that he advised Defendant of his Miranda rights and confirmed Defendant's understanding of his rights prior to questioning Defendant about the items recovered during the searches. (Tr.  46-49)   Although Defendant acknowledges this evidence, Defendant asserts P.O. Sneed's testimony that P.O. Vestal, but not P.O. Sneed, read Defendant his Miranda rights prior to questioning "violated [Defendant's] rights[.]"[15] [ECF No.

---

[13] Defendant's motion includes a general allegation that his "statements were not knowingly, freely or voluntarily given[.]" [ECF No. 60, ¶11] Defendant's legal argument, however, focuses solely on the alleged violation of Defendant's Miranda rights and he presents no argument in support of his assertion that his statements were unknowing and unvoluntary. Defendant also did not present any argument regarding this allegation in his post-hearing brief and memorandum. [ECF Nos. 135, 140] Because Defendant has not presented any authority or argument in support of this issue, the Court declines to address it.

[14] Because the Government does not dispute Defendant's contentions that he was detained, subjected to a custodial interrogation, and protected by Miranda, the Court does not address these issues.

[15] Specifically, Defendant points to the following testimony by Officer Sneed:

Q.  Did you read him his Miranda rights?
A.  I did not ask him any questions until he was presented with his Miranda rights by a different officer.
Q. And what officer was that?
A. I believe it was Officer Vestal.
Q. Did you observed Officer Vestal read him his rights?
A. Yes.
Q. Where was that done at?
A. In the vehicle, but the officer was standing outside the vehicle. (Tr.  39)

135] Defendant provides no argument or legal authority in support of his assertion that P.O. Sneed's testimony demonstrates a violation of Defendant's rights and it is unclear whether Defendant is asserting that: (1) P.O. Sneed's testimony that P.O. Vestal read Defendant his <u>Miranda</u> rights demonstrates that P.O. Wolf did not do so or undermines the credibility of the officers' testimony that Defendant was advised of his <u>Miranda</u> rights prior to questioning, or (2) Defendant's rights were violated because P.O. Sneed was personally required to Mirandize Defendant prior to questioning him.

With respect to the first possibility, the fact that P.O. Sneed testified that P.O. Vestal advised Defendant of his <u>Miranda</u> rights does not establish that Defendant was not advised of his rights. P.O. Wolf's testimony that he read Defendant his <u>Miranda</u> rights was uncontradicted at the hearing and is consistent with a Case Report authored by P.O. Wolf on the day of the search in which he states that Defendant "was advised of his Constitutional Rights per <u>Miranda</u> by P.O. Wolf."[16] [ECF No 58-2]  As to the second possibility, Defendant has provided no legal authority suggesting an individual must be advised of his <u>Miranda</u> rights by every officer present and asking questions during a single custodial interview.

Based on a review of the evidence adduced at the hearing, the Court credits P.O. Wolf's testimony and concludes that P.O. Wolf administered <u>Miranda</u> warnings to Defendant prior to P.O. Wolf and P.O. Sneed questioning him about the items recovered during the searches. Accordingly, the Court recommends denial of Defendant's Motion to Suppress statements [ECF No. 60] on the

---

[16] Also, on redirect Officer Sneed testified he could not specifically remember which probation officer interviewed Defendant after the searches were completed and that it was possible that it was Officer Wolf, and not Officer Vestal, who conducted the interview. (Tr.  42) Although this testimony does not directly address the question of who advised Defendant of his <u>Miranda</u> rights, the reasonable inference (especially when combined with Officer Sneed's testimony that he "believed" it was Officer Vestal who mirandized Defendant) is that Officer Sneed could not accurately recall whether it was Officer Vestal or Officer Wolf who advised Defendant of his <u>Miranda</u> rights and questioned Defendant.

basis of failure to provide <u>Miranda</u> warnings.

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Strike for the Government's failure to produce Jencks Act materials [ECF No. 128] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress the evidence seized from his vehicle [ECF No. 58] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress the evidence seized from his residence  [ECF No. 83] be **DENIED**.

**IT IS FINALLY RECOMMENDED** that Defendant's Motion to Suppress Statements [ECF No. 60] be **DENIED**.

**The parties are advised that they have fourteen (14) days after service of this Report and Recommendation in which to file written objections to it**, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to review.  <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990) (per curiam); 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59.

This matter will be set for trial at a later date before the Honorable Stephen R. Clark, United States District Judge.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of August, 2023